UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **VetNetwork, LLC** | : | |
|     *Plaintiff* | : | Case No. |
| | : | |
| | : | Complaint for |
| vs. | : | Copyright Infringement |
| | : | |
| **Internet Brands, Inc.** | : | Jury Trial Demanded |
|     *Defendant* | : | |

## VERIFIED COMPLAINT

Plaintiff VetNetwork, LLC ("VetNetwork") for its complaint against Internet Brands, Inc. ("Internet Brands") alleges as follows:

## THE PARTIES

1. Plaintiff VetNetwork is a limited liability company organized under the laws of the state of New Hampshire with its principal place of business in Dover, New Hampshire. VetNetwork designs and develops websites for veterinarians and veterinary hospitals.

2. Defendant Internet Brands is a corporation organized under the laws of the state of Delaware with its principal place of business in El Segundo, California. Internet Brands designs and develops websites for veterinarians and veterinary hospitals under the name VetMatrix.

## JURISDICTION AND VENUE

3. This action arises out of the Copyright Act of 1976, 17 U.S.C. §101 et seq. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

4. Internet Brands is subject to personal jurisdiction within the District of New Hampshire (the "District') consistent with principles of due process and New Hampshire's long arm statute. Internet Brands offers its products and services for sale

in this district, has transacted business in this district, has committed acts of copyright infringement in this district, and/or has placed infringing products and services into the stream of commerce through established distribution channels with the expectation that such products and services will be purchased by residents of this district.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

## **FACTS**

6. VetNetwork is owned by Mark Feltz, D.V.M. (hereinafter "Dr. Feltz").  Dr. Feltz is a doctor of veterinary medicine and closed his veterinary practice in 1998 to form a business to design and develop customized websites for veterinarians and veterinary hospitals.

7. Dr. Feltz originally operated his business under the trade name "VetNetwork" and subsequently formed the VetNetwork and transferred all right title and interest in the business to VetNetwork.

8. Dr. Feltz has specialized knowledge of both veterinary medicine and the operation and marketing of veterinary hospitals and has written over four hundred and fifty articles on these subjects.  These articles are part of an article database stored on VetNetwork's servers that may be searched for and displayed on the websites that VetNetwork creates.  Along with Dr. Feltz's in-depth knowledge of veterinary medicine and veterinary hospital ownership, access to these articles is an important feature that differentiates VetNetwork from other veterinary website developers.

9. VetNetwork offers three levels of website design services, which it categorizes as EasyVetSites, BudgetVetSites and Custom Veterinary Websites.

10. VetNetwork's EasyVetSites service is similar to, and directly competes with, the service that Internet Brands provides insofar as veterinarians and veterinary hospitals may input basic business information, select a design template, and have a website created from this information at no charge. VetNetwork hosts these sites for a subscription fee of $39 / month.

11. VetNetwork's Custom Veterinary Websites service provides highly customized websites for its customers, which include customer specific text, photographs, and graphics. VetNetwork charges its customers between $4,300 and $6,800 to develop a customized website for a veterinary hospital.

12. VetNetwork writes customized text for each of the custom websites that it develops. Creating customized text for each site allows VetNetwork's customers to appeal to local pet owners and avoids the inclusion of duplicate text, which adversely impacts the placement of a website on Google® and other search engines.

13. VetNetwork does not assign the copyrights to the websites that it creates but, rather, retains the copyrights and licenses the websites for use by its customers.

14. Internet Brands also offers website design services to veterinarians and veterinary hospitals. Specifically, Internet Brands operates through its "featured brands." One of Internet Brands' featured brands is iMatrix, through which Internet Brands offers "Premium web presence and internet marketing services for [small and medium sized businesses]." iMatrix, in turn, offers website design services to veterinarians and veterinary hospitals under the brand name VetMatrix. VetMatrix describes itself on its website as "an iMatrix company." Attached as **Exhibit 1** is a copy of (1) the webpage of Internet Brands that provides a link to the brand iMatrix; (2) the

webpage of iMatrix that provides a link to the brand VetMatrix; and (3) the webpage of VetMatrix linked to from iMatrix.

15. In 2013, VetNetwork discovered that the search engine rankings of a number of its customers' custom websites had substantially declined. In response to this discovery, VetNetwork performed a search of veterinary websites and found that its text, photographs, graphics and, in some cases, entire websites that it had developed had been copied verbatim and used on the websites of different veterinary hospitals throughout the United States and Canada.

16. VetNetwork discovered that the content for these websites was provided by Internet Brands (doing business as VetMatrix).  The document attached as **Exhibit 2** sets forth the following specific facts concerning each known copyright violation committed by Internet Brands: (1) the name of each client for whom Internet Brands designed and/or produced an infringing website; (2) the specific webpage showing VetNetwork's copyrighted text, photographs, and/or graphics (the copyrighted work); (3) the certificate of registration number applicable to the violation; and (4)  the specific webpage showing Internet Brands' corresponding infringing text, photographs, and graphics (the infringing content). VetNetwork's search for infringing content is continuing, and VetNetwork reserves the right to supplement this list as further acts of copyright infringement are discovered. Attached as **Exhibit 3** are VetNetwork's certificates of registration corresponding to each copyrighted work infringed by Internet Brands.

17. VetNetwork has not authorized Internet Brands to use its copyrighted content. Internet Brands blatantly copied content that is owned by VetNetwork and has been used on websites that VetNetwork has developed for its customers.

18. The inclusion of duplicate content negatively impacts the placement of websites on search results and causes significant harm to VetNetwork's business reputation and to the value of the websites that VetNetwork has developed for its clients.  Further, the verbatim copying of VetNetwork's content is strong evidence of willfulness in Internet Brands' actions.

19. The text, graphics and artwork embodied in the VetNetwork articles and the websites designed by VetNetwork for its clients are all original works of authorship owned by VetNetwork which are fixed in a tangible medium of expression and subject to certificates of registration issued to VetNetwork by the United States Copyright Office.

20. At all times relevant hereto, VetNetwork has retained sole ownership of all copyrights in the text, photographs, and graphics embodied in the VetNetwork articles and the websites designed by VetNetwork for its clients.

21. Internet Brands has had substantial access to the text, photographs, and graphics embodied in the VetNetwork articles and the websites designed by VetNetwork for its clients and has negligently and, upon information and belief, knowingly and willfully caused copyrighted materials embodied in the VetNetwork articles and the websites designed by VetNetwork for its clients to be copied into websites and website templates.

22. The websites and website templates created by Internet Brands constitute unauthorized derivative works and/or are substantially similar to the VetNetwork articles and the websites designed by VetNetwork for its clients.

23. By such wrongful conduct, Internet Brands has infringed and will continue to infringe VetNetwork's copyrights in the VetNetwork articles and the websites designed by VetNetwork for its clients, hereby proximately causing VetNetwork damage.

## COUNT ONE: COPYRIGHT INFRINGEMENT

24. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

25. Through the conduct set forth herein, Internet Brands has infringed VetNetwork's copyright in violation of 17 U.S.C. §§ 106 and 501.

26. Internet Brands' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to VetNetwork's rights.

27. As a direct and proximate result of said infringement by Internet Brands, VetNetwork is entitled to damages in an amount to be proven at trial.

28. VetNetwork is entitled, pursuant to 17 U.S.C. § 504(b), to recover the actual damages suffered by it as a result of the infringement and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  VetNetwork is entitled to an accounting of and a constructive trust with respect to such profits.

29. VetNetwork is entitled, pursuant to 17 U.S.C. § 504(c)(1), to elect recovery of an award of statutory damages with respect to each work infringed upon.

30. Because this infringement was committed willfully, VetNetwork is entitled, pursuant to 17 U.S.C. § 504(c)(2), to elect recovery of an increased award of statutory damages with respect to each work infringed upon.

31. VetNetwork is entitled, pursuant to 17 U.S.C. § 505, to recovery of its attorneys fees and full costs.

32. As a direct and proximate result of the foregoing acts and conduct, VetNetwork has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Internet Brands will continue to infringe VetNetwork's rights.  VetNetwork is entitled to preliminary and permanent relief to restrain and enjoin Internet Brands' continuing infringing conduct.

## DEMAND FOR JURY TRIAL

VetNetwork demands a jury trial pursuant to Fed. R. Civ. P. 38 on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, VetNetwork prays for judgment as follows:

A. For damages in such amount as may be found, or as otherwise permitted by law;

B. For an accounting of, and the imposition of a constructive trust with respect to, Internet Brands' profits attributable to its infringement of VetNetwork's copyright in the infringed content;

C. For preliminary and permanent injunction prohibiting Internet Brands and its respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe VetNetwork's copyright in the infringed content;

D. For prejudgment interest according to law;

E. For VetNetwork's attorneys fees, costs, and disbursements in this action;

F. For statutory fees and assessments to the extent permitted by law; and

G. For such further relief that this Court considers just and appropriate.

Respectfully submitted,
VetNetwork, LLC

Date: February 4, 2015    By:    \_\_\_\_\_/s/ James Ball_____
Michael J. Persson (NH #12128)
James Ball (NH #19209)
Lawson Persson & Weldon-Francke, PC
Post Office Box 712
Laconia, NH 03247-0712
603-528-2900
mike@laconialaw.com
jball@laconialaw.com

## **VERIFICATION**

I, Mark Feltz, both individually and as an officer of VetNetwork, LLC, do hereby declare, under penalty of perjury, that I have reviewed this "Verified Complaint", and that facts set forth herein are true to the best of my knowledge and belief.

VetNetwork, LLC

Date: February 4, 2015    By:    \_\_\_\_\_/s/ Mark Feltz_____
Mark Feltz, its duly authorized officer

Date: February 4, 2015    By:    \_\_\_\_\_/s/ Mark Feltz_____
Mark Feltz, Individually